[No. S068112. May 3, 1999.]

THE PEOPLE, Plaintiff and Respondent, v
DONALD DWAYNE FRANKLIN, Defendant and Appellant.

250

**COUNSEL**

William D. Farber, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey, Kyle S. Brodie and Christina Russotto, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CHIN, J.**—State law imposes an annual registration requirement on certain sex offenders while they reside or are located in California. (Pen. Code, § 290, subd. (a)(1)(A), (C).)[1] Offenders subject to registration must also notify authorities of any change of their address. (§ 290, subd. (f)(1).) A 1998 amendment to section 290, adding subdivision (f)(1), specifically requires offenders to give change-of-address notification on leaving California. (Stats. 1998, ch. 930, § 1.1.)

Defendant in the present case failed to notify the California authorities with whom he had initially registered under section 290 that he and his wife

---

[1]Further statutory references are to the Penal Code unless otherwise indicated.

had moved from California to Texas on May 1, 1995. The trial court found him guilty of violating the notification provisions of the state registration law then in effect (§ 290, former subd. (f)), and also found true two prior "strike" allegations (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), arising out of two sex offenses he committed in 1985. Accordingly, the court sentenced defendant to state prison for 25 years to life for failing to comply with the registration statute. The Court of Appeal affirmed the judgment. We granted review.

We consider whether the notification requirement in effect when defendant moved to Texas applied to persons who left the state to live elsewhere. As will appear, we conclude that, before the amendment of the registration statute in 1998, it was ambiguous as to its application to departing residents such as defendant. Accordingly, we must construe the ambiguous statute in defendant's favor and will reverse the decision of the Court of Appeal affirming his conviction.

SECTION 290

Under the registration provision applicable to defendant, a sex offender was required "for the rest of his . . . life while residing in California, . . . to register . . . within 14 days of coming into any county [or] city . . . in which he . . . temporarily resides or is domiciled for that length of time." (§ 290, former subd. (a)(1), as amended by Stats. 1994, ch. 867, § 2.7; see § 290, present subd. (a)(1)(A) [registration within five working days].) Language limiting section 290 to California residents was added in 1994. (§ 290, former subd. (a)(1), as amended by Stats. 1994, ch. 867, § 2.7.) At the same time, violation of the statute became a felony for registrants previously convicted of felony sex crimes. (§ 290, former subd. (g)(2), as amended by Stats. 1994, ch. 867, § 2.7.) Persons subject to section 290 were required to inform the appropriate law enforcement agency of any change of "residence address" within 10 days. (§ 290, former subd. (f), as amended by Stats. 1994, ch. 867, § 2.7; see § 290, present subd. (f)(1) [notice within five working days].) Under both versions of the registration statute, the agency is required to forward changed address information to the Department of Justice, which in turn must forward it to the appropriate agencies in the new place of residence. (§ 290, former subd. (f), as amended by Stats. 1994, ch. 867, § 2.7; see present § 290, subd. (f)(1).) Likewise, under both versions, willful violation of the registration or notification provisions by a person initially required to register because he committed a prior felony is itself a felony offense. (§ 290, former subd. (g)(2), as amended by Stats. 1994, ch. 867, § 2.7; see present § 290, subd. (g)(2).)

A 1998 amendment to section 290, subdivision (f)(1), adopted after we granted review in this case, and effective January 1, 1999, specifically

requires change of address notification when a registrant "changes his . . . residence address or location, whether within the jurisdiction in which he . . . is currently registered *or to a new jurisdiction inside or outside the state* . . . ." (Stats. 1998, ch. 930, § 1.1, italics added.) Although the amendment makes it clear that in the future registrants must give a change-of-address notification when leaving California, courts confronted with violations of earlier versions of section 290 may benefit from our clarification of the issue.

## FACTS

The following uncontradicted facts are largely taken from the Court of Appeal opinion in this case. Defendant was subject to the sex offender registration law as a result of his 1985 convictions of child molestation and child sodomy. He first registered in 1989, but evidently failed to register annually after that time. (Defendant's conviction was not based, however, on his failure to register, an offense of which he was acquitted.) In late 1994 and early 1995, defendant lived in North Hollywood and Wilmington, California. On May 1, 1995, defendant and his wife moved to Texas. Defendant failed to notify any California law enforcement agency of any of his various address changes. In December 1995, defendant was arrested in Texas and then returned to California.

Defendant was charged with two counts of child molestation (§ 288, subd. (a)), two violations of the sex offender registration law (§ 290, former subds. (a)(1) [failure to re-register in June 1995], (f) [failure to notify of changed address from January 1995 through December 1996], (g)(2) [making these violations felony offenses]), and various felony conviction enhancements and "strikes." Defendant waived jury trial, in return for which the prosecution agreed to dismiss both molestation charges. Defendant did not testify or present any evidence at trial.

The trial court acquitted defendant of the failure to re-register count but convicted him of the other registration act count, based solely on his failure to notify state authorities of his move to Texas. The court also found true both "strikes." Defendant was subject to the sex offender registration law as a result of his 1985 felony convictions of child molestation and child sodomy. Accordingly, his present offense was likewise a felony. (§ 290, subd. (g)(2).) As previously noted, the court sentenced defendant to state prison for 25 years to life.

## THE COURT OF APPEAL DECISION

The Court of Appeal would have affirmed the judgment, reasoning as follows: "The duty to register and give notice of address changes is a

continuing one. (*Wright* v. *Superior Court* (1997) 15 Cal.4th 521 [63 Cal.Rptr. 322, 936 P.2d 101].) As our Supreme Court has observed: 'Plainly, the Legislature perceives that sex offenders pose a "continuing threat to society" [citation] and require constant vigilance.' (*Id.* at p. 527.) [¶] We hold that 'while residing in California' (Pen. Code, § 290, [former] subd. (a)(1)) applies to a person who changes his residence from California to a residence outside California. When [defendant] departed his California residence he did not yet reside in Texas. The departure, however, created a notification of address change duty. Had [defendant] fulfilled this duty, established residency in Texas, and then moved again (but not back to California) he could properly make the argument he now asserts: He was not 'residing in California.' "

## DISCUSSION

██ We disagree with the Court of Appeal's overly technical analysis. Initially, we note that failure to comply with California's sex offender registration law constitutes a penal offense. (§ 290, subd. (g).) In the present case, defendant was convicted of a felony for failing to comply with the statute and was sentenced to 25 years to life in prison.[2] That being so, the statute must be construed as favorably to the defendant as its language and the circumstances of its application reasonably may permit. (*People* v. *McCleod* (1997) 55 Cal.App.4th 1205, 1216 [64 Cal.Rptr.2d 545]; see *People* ex rel. *Lungren* v. *Superior Court* (1996) 14 Cal.4th 294, 312 [58 Cal.Rptr.2d 855, 926 P.2d 1042]; *In re Christian S.* (1994) 7 Cal.4th 768, 780 [30 Cal.Rptr.2d 33, 872 P.2d 574]; *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; cf. *Lambert* v. *California* (1957) 355 U.S. 225, 229 [78 S.Ct. 240, 243, 2 L.Ed.2d 228] ["[A]ctual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the [sex offender registration] ordinance can stand."].)

This principle of favorable construction is especially apposite to registration statutes, which, to assure effective compliance, must give *clear notice* to all registrants of their responsibilities so that laypersons such as defendant can readily understand and properly discharge them. (See Cal. Const., art. I, § 7 [due process clause]; *Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 143 [253 Cal.Rptr. 1, 763 P.2d 852] [" 'A statute should be sufficiently

---

[2] We express no opinion on whether the obligation that a person register as a sex offender, imposed as a consequence of a conviction of a criminal offense, constitutes punishment for purposes of ex post facto analysis. That issue is before us in *People* v. *Castellanos*██ (Cal.App.) review granted Nov. 25, 1997 (S064388).

certain so that a person may know what is prohibited thereby and what may be done without violating its provisions . . . .' "]; *Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108 [92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222] [Laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning."].)

Defendant argues that, under one reasonable interpretation of the version of section 290 applicable to him, his duty to register annually with California law enforcement agencies continued only while he resided in this state. Assuming his registration duty terminated when he left the state, his related obligation to notify authorities regarding his new address would also have terminated. Former subdivision (f) of section 290, containing the notification provision, applied only to a "person who is required to register pursuant to this section."

This construction of the statute has a rational basis: Although the state has a clear and legitimate interest in protecting its own citizens from criminal offenders by tracking their whereabouts *within its borders*, this interest is arguably diminished when offenders leave this state to establish residence elsewhere.

As we recently stated in *Wright* v. *Superior Court* (1997) 15 Cal.4th 521, 527 [63 Cal.Rptr.2d 322, 936 P.2d 101], the registration act is intended to promote the state's interest in controlling crime and preventing recidivism in sex offenders by making them readily available for police surveillance at all times. (See also *People* v. *McClellan* (1993) 6 Cal.4th 367, 376, fn. 7 [24 Cal.Rptr.2d 739, 862 P.2d 739], and cases cited.) But California's interest in controlling crime and surveilling prior offenders is strongest within its borders. Once registrants leave California, the states they enter assume primary responsibility for surveilling them. This principle is illustrated by statutes in sister states, including Texas, imposing registration and address change notification duties on sex offenders coming from other states. (See, e.g., Tex. Code Crim. P. Ann. arts. 62.01-62.02 (West 1998) [registration requirement], 62.04 [address change notification].) Indeed, the California registration act now requires that all registrants be notified that "he or she may have a duty to register in any other state where he or she may relocate." (§ 290, subd. (e)(2)(D), added by Stats. 1997, ch. 821, § 3.5.)

Significantly, several other states with registration statutes similar to California's explicitly require offenders to notify state officials when they leave the state. For example, under the Texas statute, offenders who intend to change their address *or to move to another state* must report to the local

law enforcement agency with whom they last registered and provide the anticipated move date and new address. (Tex. Code Crim. P. Ann., *supra*, art. 62.04(a).) An offender who moves to another state that has a sex offender registration statute must register with that state's law enforcement agency within 10 days of arrival. (Tex. Code Crim. P. Ann., *supra*, art. 62.04(c).)

Similar provisions exist in the sex offender registration statutes of Arkansas (Ark. Code Ann. § 12-12-909, subd. (c)(1) (Michie 1987, 1997 supp.)), Georgia (Ga. Code Ann. § 42-1-12, subd. (b)(3)(A)(iii) (1998)), Hawaii (Haw. Rev. Stat. § 846E-7 (1998)), Illinois (Ill. Comp. Stat. Ann. ch. 730, act 150, § 6 (West 1998)), Iowa (Iowa Code Ann. § 692A.3, subd. 4 (West 1998)), Louisiana (La. Rev. Stat. Ann. § 542.1C(3) (West 1998)), Massachusetts (Mass. Gen. Laws Ann. ch. 6, § 178E(e) (West 1998)), Nevada (Nev. Rev. Stat. Ann. § 179D.470, subd. 2(b) (Michie 1997)), Ohio (Ohio Rev. Code Ann. § 2950.05(C) (Banks-Baldwin 1998)), South Carolina (S.C. Code Ann. § 23-3-460 (Law. Co-op. 1998)), Vermont (Vt. Stat. Ann. tit. 13, § 5407, subd. (b) (1998)), Washington (Wash. Rev. Code Ann. § 9A.44.130, subd. (5)(a) (West 1998)), and West Virginia (W. Va. Code § 61-8F-7 (1998)), each of which by its terms requires registered offenders to notify state authorities when they leave the state. As noted, until 1998, the California registration statute did not expressly require this form of notice. Although the parties have not submitted any conclusive legislative history, the 1998 amendment may reflect the Legislature's recognition that the former provision was ambiguous in this regard.

We recognize that defendant's interpretation of former section 290 is not the only possible reading of the statute. One reasonably could accept the People's contrary view, which the Court of Appeal adopted, that (1) when defendant departed for Texas, he nonetheless temporarily continued to "reside" in California (see Gov. Code, § 244, subd. (c)) and therefore remained subject to the registration act's notification provisions, and (2) California has a continuing interest in tracking sex offenders outside state boundaries, to assure continuing surveillance and notification to interested authorities in other states.

But given the limited application of section 290, former subdivision (a)(1), to offenders "while residing in California," its provisions were at least *ambiguous* regarding their application to persons, such as defendant, who move to another state. Certainly, a layperson such as defendant could reasonably assume that the 1995 version of the act did not apply to him once he left California. Accordingly, we must apply the rule, discussed above, that any statutory ambiguities in a penal law ordinarily should be construed in the defendant's favor.

■ "[T]he determination of the meaning of statutes is a judicial function . . . ." (*People* v. *Cruz* (1996) 13 Cal.4th 764, 781 [55 Cal.Rptr.2d 117, 919 P.2d 731].) We look to all pertinent circumstances and considerations in deciding whether an amendment is a modification or clarification of a statute. (*Ibid.*) ■ Nothing in section 290, before its 1998 amendment, conclusively establishes that the statute imposed notification requirements on nonresidents. Change-of-address notification was required within 10 days of moving, which in this case occurred after defendant established residency in Texas. Under one reasonable interpretation of former section 290, at that point defendant, as a nonresident, had no further responsibilities under the California statute.

We note that defendant may have violated section 290, former subdivision (f), by failing to notify California authorities of his earlier change of addresses *within California*. Defendant's conviction was not based, however, on this failure to notify. The trial court's reliance on a legally incorrect theory of guilt requires that we reverse defendant's conviction. We express no opinion as to whether the evidence is sufficient to convict defendant of violating section 290, subdivision (f), under the "continuing offense" theory approved in *Wright* v. *Superior Court, supra,* 15 Cal.4th 521, 527-528.

The judgment of the Court of Appeal is reversed.

George, C. J., Mosk, J., Kennard, J., and Werdegar, J., concurred.

**BROWN, J.**—I dissent.

Undoubtedly, Penal Code section 290[1] would benefit from a substantial rewriting. I cannot agree, however, that subdivision (f), read in conjunction with subdivision (a)(1), is fatally ambiguous or did not adequately inform defendant of the obligation to notify authorities of his change of address

---

[1] All statutory references are to the Penal Code. All section 290 references are to the version of the statute in effect at the time of defendant's offense, unless otherwise indicated. (See Stats. 1994, ch. 867, § 2.7.)

As relevant here, section 290, subdivision (a)(1) (section 290(a)(1)), provided: "Every person described in paragraph (2), for the rest of his or her life while residing in California, shall be required to register . . . within 14 days of coming into any county, city, or city and county in which he or she temporarily resides or is domiciled for that length of time. The person shall be required annually thereafter, within 10 days of his or her birthday, to update his or her registration with the entities described in this paragraph . . . ."

Section 290, subdivision (f) (section 290(f)), provided: "If any person who is required to register pursuant to this section changes his or her residence address, the person shall inform, in writing within 10 days, the law enforcement agency or agencies with whom he or she last registered of the new address. The law enforcement agency or agencies shall, within three days after receipt of this information, forward it to the Department of Justice. The Department of Justice shall forward appropriate registration data to the law enforcement agency or agencies having local jurisdiction of the new place of residence."

when he moved to Texas. To reach a contrary conclusion, the majority has resorted to linguistic contortions only a sophist could love and disregarded the only reasonable interpretation of the statutory language. Worse yet, it has construed section 290(a)(1) to undermine the Legislature's recent amendment to section 290(f), which would otherwise have placed beyond cavil the duty to notify of *any* change of address regardless of the registrant's new location. (See Stats. 1998, ch. 930, § 1.1.)

Section 290(f) provided in relevant part: "If any person who is required to register pursuant to this section changes his or her residence address, the person shall inform, in writing within 10 days, the law enforcement agency or agencies with whom he or she last registered of the new address." (See fn. 1, *ante*.) The majority's construction of this provision to absolve defendant of his responsibility is flawed in several respects: First, it necessarily reads into the statute a limitation not imposed by the Legislature—that notification is required only when the person "changes his or her residence address *within California*." We have previously described section 290 as a "comprehensive statutory scheme" (*Wright* v. *Superior Court* (1997) 15 Cal.4th 521, 528 [63 Cal.Rptr.2d 322, 936 P.2d 101] (*Wright*)) " 'to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future.' [Citation.]" (*Id.* at p. 527.) Accomplishing this goal "depends on timely change-of-address notification." (*Ibid.*) Courts should thus avoid construing any provision more narrowly than the express statutory language demands. (See also Code Civ. Proc., § 1858 ["In the construction of a statute . . . , the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted . . . ."].)

Second, the majority's construction confuses *who* must register with *when* the registration obligation applies. Under section 290(a)(1), a person required to register was "[e]very person described in [section 290, subdivision (a)(2),]" including those, such as defendant, who committed certain enumerated sex offenses. "[W]hile residing in California" is a separate and distinct proviso, which qualifies the mandate that a sex offender is subject to section 290 "for the rest of his or her life." (§ 290(a)(1); see fn. 1, *ante*.) "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]" (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; see also *United States* v. *Brown* (1948) 333 U.S. 18, 25-26 [68 S.Ct. 376, 379-380, 92 L.Ed. 442].) A plain reading of the statute as a whole,

unobscured by legalistic parsing, leads not to ambiguity but to one reasonable conclusion: section 290(f) applied whenever there was a change of address unless the registrant was already residing outside California.

Nevertheless, defendant insists, and the majority accepts, that the statute was sufficiently ambiguous to excuse his noncompliance because "within 10 days" (§ 290(f)) after he left for Texas, he was no longer "residing in California." (§ 290(a)(1).) " 'Residence, as used in the law, is a most elusive and indefinite term. It has been variously defined. . . . To determine its meaning, it is necessary to consider the purpose of the act.' [Citations.]" (*Smith* v. *Smith* (1955) 45 Cal.2d 235, 240 [288 P.2d 497].) Defendant's attempt to capitalize on the most favorable of the various legal definitions of "residence" does not establish ambiguity when the commonsense meaning is otherwise clear. Moreover, it is inconsistent with the legislative intent underlying the registration statute as a whole and the integral function of the address change notification requirement. (See *Wright*, *supra*, 15 Cal.4th at pp. 526-527.) Given the " 'continuing threat to society' " posed by sex offenders (*id.* at p. 527), official knowledge of their whereabouts is imperative. That concern does not significantly diminish when they cross state lines so as to eliminate the need for change-of-address information. (See, e.g., 42 U.S.C. § 14071.)[2]

The majority's analysis further confuses when the notification duty arises and when a violation occurs. (See *Wright*, *supra*, 15 Cal.4th at p. 526.) The obligation arises as soon as the registrant departs for a new location, at which point—under any reasonable interpretation—he is still residing in California. (*Ibid.*) A violation occurs 10 days thereafter but only if the offender has failed to notify authorities of the address change. The 10-day interval is a grace period "employed to discourage premature police action and allow a reasonable time to accomplish registration . . . ." (*In re Parks* (1986) 184 Cal.App.3d 476, 480 [229 Cal.Rptr. 202].) It is not a "King's X" permitting a person coming within the statute's ambit to divest himself of

---

[2]Title 42 United States Code section 14071 conditions a state's receipt of certain federal funding on compliance with the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program. In particular, it mandates that "[a] person who has been convicted of an offense [including child molestation] which requires registration under this section and who moves to another State, shall report the change of address to the responsible agency in the State the person is leaving, and shall comply with any registration requirement in the new State of residence. The procedures of the State the person is leaving shall ensure that notice is provided promptly to an agency responsible for registration in the new State, if that State requires registration." (42 U.S.C. § 14071(b)(5).) Heretofore, the Legislature has assumed section 290 conformed to this requirement. (See Stats. 1997, ch. 818, § 1.)

residence status and notice requirements with impunity.[3] (Cf. *Wright, supra,* 15 Cal.4th at pp. 526-527.) When the Legislature has gone to such lengths to bring every anticipated circumstance within the scope of section 290 (see, e.g., § 290, subd. (a)(1)(A), as amended by Stats. 1997, ch. 820, § 1 [requiring registration even if the sex offender "has no residence"]), it is all the more anomalous to construe an act of legislative forbearance as license to evade the notification requirement.

Finally, the most serious consequence of the majority's construction is not that it permits defendant, a sex offender of the most egregious type,[4] to evade punishment for flouting his obligations under section 290. It has effectively nullified the recent amendment intended to address the very question raised by this case. Section 290, subdivision (f)(1) now requires a registrant to notify of a change of address "whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state . . . ."[5] (Stats. 1998, ch. 930, § 1.1.) The majority apparently assumes this has rectified the "ambiguity" pressed by defendant. However, because the majority has defined a "person required to register pursuant to this section" as a function of "while residing in California" (rather than the enumerated categories of section 290, subdivision (a)(2)), defendants who move out of state can now cite this opinion to successfully argue that they had no notification duty even under the current version of section 290(f). That is, as long as they relocate within five working days, they are not "residing in California" (§ 290(a)(1)) and therefore not required to register pursuant to this section.

In reversing the Court of Appeal's judgment, the majority invokes the principle that ambiguity in a criminal statute should be resolved in favor of the defendant. While generally true, "it must be emphasized that the canon entitles the defendant only to the benefit of every *realistic* doubt. This rule of construction ' "is not an inexorable command to override common sense and evident statutory purpose. It does not require magnified emphasis upon a single ambiguous word in order to give it a meaning contradictory to the fair

---

[3]Ironically, but not surprisingly, in *Wright*, the defendant argued that the 10-day period was the only time within which a violation of section 290(f) could occur. (15 Cal.4th at pp. 529-530.)

[4]Defendant was required to register pursuant to section 290 as a result of his conviction for lewd and lascivious conduct with a child under the age of 14 (§ 288, subd. (a)) and sodomy with a child under the age of 14 (§ 286, subd. (c)).

[5]In full, the current version of section 290, subdivision (f)(1), provides in relevant part: "If any person who is required to register pursuant to this section changes his or her residence address or location, whether within the jurisdiction in which he or she is currently registered or to a new jurisdiction inside or outside the state, the person shall inform, in writing within five working days, the law enforcement agency or agencies with which he or she last registered of the new address or location."

import of the whole remaining language." ' [Citations.]" (*People* v. *Anderson* (1987) 43 Cal.3d 1104, 1145-1146 [240 Cal.Rptr. 585, 742 P.2d 1306]; see § 4 ["All [Penal Code] provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."].) The "ambiguity" discerned by the majority is nothing more than defendant's casuistry. In mistaking the one for the other, the majority has ignored the plain meaning of the statute and done a grave disservice to the legislative goals section 290 is intended to promote.

Baxter, J., concurred.