TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 24-803 |
| of | : | |
| | : | February 13, 2025 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| CATHERINE BIDART | : | |
| Deputy Attorney General | : | |

The HONORABLE STEVE BENNETT, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on a question relating to municipal library boards.

**QUESTION PRESENTED AND CONCLUSION**

May a general law city that has expanded its city council from five to seven members establish a seven-member municipal library board of trustees to permit all members of the city council to serve on that board, instead of a five-member board as specified in Education Code section 18910?

No. A general law city that has expanded its city council from five to seven members may not establish a seven-member municipal library board of trustees because Education Code section 18910 specifies that such a board consists of five members, and neither that statute nor any other statute or applicable authority provides an exception.

1

# BACKGROUND

Education Code section 18910 is part of the Municipal Libraries Act, which authorizes municipal public libraries.[1] The Act "prescribe[s] a detailed scheme for the establishment and operation of such libraries."[2] The authority to establish a municipal library predates the Act, which the Act acknowledges in authorizing a city to establish a library if one has not yet been established.[3]

Once established, a municipal library is operated by an appointed board of trustees.[4] Among other things, a library board may buy books, journals, and other publications, employ and prescribe duties of the librarian and other employees, and administer trusts and gifts for the library.[5] The number of trustees that may serve on a library board is the focus of our attention. Without exception, Education Code section 18910 describes the library board as "consisting of five members."[6]

We are informed that the City of Oxnard would prefer all seven of its council members to serve simultaneously on its library board. Prior to 2018, Oxnard's city council consisted of five members. In 2018, the City expanded its city council to seven members when it changed to district-based elections.[7] The City states that it was required

---

[1] *Friends of the Library of Monterey Park v. City of Monterey Park* (1989) 211 Cal.App.3d 358, 362.

[2] *Id*. at p. 369.

[3] *Id.* at pp. 364-365; Ed. Code, § 18900 ("The common council, board of trustees, or other legislative body of any city in the state may, and upon being requested to do so by one-fourth of the electors of the municipal corporation in the manner provided in this article, shall, by ordinance, establish in and for the municipality a public library if there is none already established therein").

[4] Ed. Code, § 18910.

[5] *Id*., §§ 18920-18922, 18926.

[6] *Id*., § 18910; *Friends of the Library of Monterey Park v. City of Monterey Park*, *supra*, 211 Cal.App.3d at p. 379 (reciting Education Code section 18910) & fn. 1 (describing Municipal Libraries Act provisions as "assigning management and control of such libraries to a five-member board of library trustees whose members hold office for terms of three years").

[7] Six members are elected by district, and a seventh elected member is the mayor. (See City of Oxnard, City Council homepage, at https://www.oxnard.gov/city-council (as of Feb. 12, 2025); see also City of Oxnard Ordinance No. 2934, section 2-3.5 [prescribing district-based elections commencing with November 2018 general election], available at https://codelibrary.amlegal.com/codes/oxnard/latest/oxnard_ca/0-0-0-65616#JD_2-3.5 (as of Feb. 12, 2025).)

2

24-803

to make such a change to resolve claims under the California Voting Rights Act.[8]  That Act prohibits the diluting or abridging of the voting rights of a protected class, and authorizes a court to impose appropriate remedies, including district-based elections for a violation of the Act.[9]  As mentioned, the City has changed to district-based elections and expanded its city council to seven members, but we were given no details regarding its resolution of the Voting Rights Act claims.[10]

## ANALYSIS

The requestor represents the Assembly district in which Oxnard is located and seeks our opinion on whether a general law city such as Oxnard may expand its library board from five to seven members.[11]  According to the City, some general law cities with five council members have designated their entire council as library board trustees, but no general law city with more than five council members has done so.  As we explain below, a general law city's expansion of its municipal library board to more than five members would be inconsistent with Education Code section 18910.  That statute specifies a municipal library board of trustees "consisting of five members" and provides no exception to that requirement.[12]

---

[8] See Elec. Code, §§ 14025-14032; see also *id*., § 10010.

[9] The Act's key provision states that at-large (rather than district-based) elections "may not be imposed or applied in a manner that impairs the ability of a protected class to elect candidates of its choice or its ability to influence the outcome of an election, as a result of the dilution or the abridgment of the rights of voters who are members of a protected class." (Elec. Code, § 14027; see also *id*., § 14026, subd. (d) [defining protected class].) A violation of that provision "is established if it is shown that racially polarized voting occurs in elections for members of the governing body . . . or in elections incorporating other electoral choices by the voters." (*Id*., § 14028.)  If a court finds a violation, it "shall implement appropriate remedies, including the imposition of district-based elections, that are tailored to remedy the violation." (*Id*., § 14029.)

[10] See *ante* note 7.

[11] Because the scope of the question extends to a general law city only, references in our opinion to a city refer to a general law city only.  A general law city derives its powers from statutes enacted by the Legislature as opposed to a city charter.  (See *City of Orange v. San Diego County Employees Retirement Assn.* (2002) 103 Cal.App.4th 45, 52.)

[12] We are not asked, and therefore provide no opinion on, whether other legal grounds such as the incompatible-offices doctrine could affect council members desiring to simultaneously serve as municipal library board trustees.

3

In construing Education Code section 18910, we employ established rules of statutory interpretation to determine the Legislature's intent.[13] We begin with the statute's words because they are generally the most reliable indicator of its intended purpose.[14] If the relevant words are subject to more than one reasonable interpretation, we consider extrinsic sources including the statute's purpose, legislative history, and public policy.[15]

Education Code section 18910 states:

> The public library shall be managed by a board of library trustees, *consisting of five members,* to be appointed by the mayor, president of the board of trustees, or other executive head of the municipality, with the consent of the legislative body of the municipality.[16]

The relevant words are clear and unambiguous. The statute prescribes an appointed board of trustees "consisting of five members." The statute makes no exception for a city with a council composed of more than five members. And we have found no exception in any other statute that would allow a general law city to establish a municipal library board having more than the five board members specified. For instance, nothing in the Voting Rights Act mentions expanding appointed, non-elected bodies, such as a library board.[17] And the Government Code statutes that authorize city councils to consist of more than five members do not provide that other bodies (such as a municipal library board) may likewise do so.[18] Those statutes are silent on library boards, and nothing in them supports the notion that a city may expand its library board beyond five members.

Under the rules of statutory construction, we may not "rewrite the law, add to it what has been omitted, omit from it what has been inserted, give it an effect beyond that gathered from the plain and direct import of the terms used, or read into it an exception,

---

[13] *Prang v. Los Angeles County Assessment Appeals Bd.* (2024) 15 Cal.5th 1152, 1170.

[14] *Ibid.*

[15] *Ibid.*

[16] Ed. Code, § 18910, italics added.

[17] Cf. Elec. Code, § 14029 (if a court finds a violation, it "shall implement appropriate remedies, including the imposition of district-based elections, that are tailored to remedy the violation"); see also *id.*, §§ 14025-14032 (California Voting Rights Act).

[18] For example, one statute provides that a city council of a general law city has "at least five members." (Gov. Code, § 36501.) And another statute authorizes a maximum of nine city council members elected by or from districts. (*Id.*, § 34871.)

4

qualification, or modification that will nullify a clear provision . . . .'"[19] And "[w]here the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history."[20]

The language in Education Code section 18910 referring to the library board as "consisting of five members" is clear on its face, and the legislative history could add no further clarity. The statute has been in effect since 1976 with nearly identical language existing elsewhere since 1901.[21] It is thus apparent that the Legislature's longstanding intent has been for municipal library boards to consist of five members.

The City nonetheless suggests that the library board should be expanded to include all seven council members because the city council "is best situated to perform the essential functions of the board." But the Legislature has not adopted that policy judgment. The Municipal Libraries Act does not require the library board to include any city council members, let alone all of them. Nor does it otherwise suggest any connection between the membership of the two bodies. What the Legislature did require is that municipal library boards "consist[] of five members."[22] If it was an oversight not to authorize city councils and library boards to have an equal number of members that exceeds five, it is up to the Legislature to address, not us.[23]

While our research disclosed no court decisions on the exact issue before us, the reasoning in a 1989 Court of Appeal case further supports our conclusion that a city may not establish a library board with more than the five members specified in the Municipal Libraries Act.[24] In that decision, the court determined that a city council may not abolish

---

[19] *Kleitman v. Superior Court* (1999) 74 Cal.App.4th 324, 334, quoting *Frazier v. City of Richmond* (1986) 184 Cal.App.3d 1491, 1496.

[20] *Ennabe v. Manosa* (2014) 58 Cal.4th 697, 719, quoting *In re Jennings* (2004) 34 Cal.4th 254, 265.

[21] Stats. 1976, ch. 1010, § 2 (enacting Education Code section 18910); Stats. 1959, ch. 2, § 27351, p. 1461 (enacting former Education Code section 27351); Stats. 1943, ch. 71, § 22212, p. 738 (enacting former Education Code section 22212); 1938 Gen. Laws, Act 2749, §§ 1-3; Stats. 1909 ch. 481, §§ 1-3; Stats. 1901, ch. 170, p. 558, §§ 1-3.

[22] Ed. Code, § 18910.

[23] See *Weber v. Superior Court of Sacramento County* (2024) 101 Cal.App.5th 342, 364 ("We express no view about whether the statutory language, thus applied, ideally balances the competing concerns or represents the soundest public policy. Such is not our responsibility or our province").

[24] As noted above, the Municipal Libraries Act includes Education Code section 18910.

5

its library board and assume control of the library.[25]  The court rejected a city's claim that it could do so under statutes unrelated to the Municipal Libraries Act, including one that confers general authority on a city to own and operate utilities, services, and recreational facilities—including libraries.[26]  The court examined the competing statutes, which were located in different codes, and concluded that the Municipal Libraries Act prevailed as the more specific statute.[27]  The situation here is similar:  The Municipal Libraries Act is the more specific statute concerning the size of library boards.  Any competing statutes do not even pertain to libraries. We therefore reject the notion that a city council may establish a library board with more members than the Act authorizes so that all members of a city council, which expanded under unrelated statutes located in different codes, may serve on the board, or for any other reason.

---

[25] *Friends of the Library of Monterey Park v. City of Monterey Park*, *supra*, 211 Cal.App.3d at pp. 364, 380.

[26] *Id*. at pp. 369-371, 381.

[27] *Ibid*.  This follows "the usual interpretive rule that 'more specific provisions take precedence over more general ones.'"  (*City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 68-69, quoting *Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 634.)

24-803